ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| COLMADO LAS DOLORES (CANÓVANAS MINI MARKET) Recurrente v. PROGRAMA WIC DEPARTAMENTO DE SALUD Recurrido | TA2025RA00197 | *REVISIÓN ADMINISTRATIVA* procedente del Programa WIC Caso Núm. DVAPW: 2025-04 (OO1) Comercio Núm.: 91107 Sobre: Descalificación |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de octubre de 2025.

Comparece ante *nos,* Colmado Los Dolores, Inc., por derecho propio y representado por su presidente Nixon Betancourt Castro (recurrente) y nos solicita que revisemos una *Resolución* emitida y notificada el 30 de julio de 2025, por el Departamento de Salud de Puerto Rico. Mediante el referido dictamen, la parte recurrida desestimó por falta de jurisdicción la *Solicitud de Revisión Administrativa* que presentó el recurrente.

Por los fundamentos que exponemos a continuación, se *confirma* el dictamen recurrido.

**I.**

El 12 de febrero de 2025, el Programa WIC (recurrida) emitió una *Notificación de Descalificación* a la parte recurrente, por haber incurrido en un patrón de violaciones al Reglamento Núm. 9170 de 4 de marzo de 2020, conocido como el Reglamento de Comerciante Autorizado y al *Acuerdo de Comerciante.* Consecuentemente, el 1 de abril de 2025, la parte recurrente presentó una *Solicitud de Revisión*

*Administrativa* sobre la *Notificación de Descalificación.* Allí, adujo que recibió un correo electrónico de la parte recurrida que indicaba la descalificación del comercio. Así pues, solicitó los documentos de la investigación realizada y la celebración de una vista administrativa para poder explicar y exponer con más detalles la situación acaecida.

Así las cosas, el 12 de mayo de 2025, el Departamento de Salud de Puerto Rico, a través de la Oficial Examinadora, emitió una *Notificación y Citación a Vista.* Dicha Vista quedó señalada para el 28 de mayo de 2025 a las 10:00 a.m. Entretanto, el 23 de mayo de 2025, la parte recurrida presentó una *Moción Asumiendo Representación Legal, Solicitud de Desestimación, en Cumplimiento de Orden e Informativa.* Arguyó que, el término para presentar la solicitud de revisión administrativa había vencido el 27 de febrero de 2025. Así, planteó que la parte recurrente solicitó de forma tardía la revisión administrativa de la determinación de descalificación. Por lo cual, solicitó la desestimación de la *Solicitud de Revisión Administrativa* por falta de jurisdicción.

El 27 de mayo de 2025, la Oficial Examinadora emitió una *Orden* mediante la cual concedió a la parte recurrente un término de cinco (5) días para replicar a la solicitud presentada por la parte recurrida. Además, dejó sin efecto el señalamiento de Vista pautado para el 28 de mayo de 2025. El 30 de mayo de 2025, la parte recurrente presentó una *Moción para Replicar la Moción Presentada por la Parte Apelada y Petición de Vista Presencial.* En la misma, afirmó que la *Notificación de Descalificación* fue inadecuada porque el correo electrónico que tenía la parte recurrida en sus archivos era incorrecto y porque la única manera que provee el Reglamento Núm. 9170, *supra,* para realizar la notificación es por correo certificado, el cual no había recibido.

Subsiguientemente, el 16 de junio de 2025, la Oficial Examinadora emitió una *Orden* mediante la cual ordenó a la parte recurrida a: (1) proveer copia certificada del sobre devuelto por el correo postal que notificaba la descalificación del comercio del recurrente; y, (2) presentar una certificación de la información de correo electrónico provisto por la parte recurrente, según surgía del expediente antes del 1 de abril de 2025. En sintonía con esto, el 23 de junio de 2025, la parte recurrida presentó una *Moción en Cumplimiento de Orden y Reiterando Solicitud de Desestimación*.

Ante ello, el 11 de julio de 2025, la Oficial Examinadora emitió un *Informe de la Oficial Examinadora* mediante el cual recomendó desestimar la *Solicitud de Revisión Administrativa* por falta de jurisdicción. Señaló que carecía de jurisdicción para atender el recurso, por haberse presentado fuera del término reglamentario establecido. Indicó, además, que la parte recurrida demostró que emitió la *Notificación de Descalificación* a la dirección correcta.

El 16 de julio de 2025, el Departamento de Salud de Puerto Rico emitió y notificó una *Resolución* mediante la cual desestimó la *Solicitud de Revisión Administrativa*. Inconforme, el 24 de julio de 2025, el recurrente presentó una *Moción para Replicar la Moción de Cumplimiento Presentada por la Parte Apelada* y una *Moción de Reconsideración*. Oportunamente, el 29 de julio de 2025, la Oficial Examinadora emitió un *Informe Enmendado de la Oficial Examinadora*. El 30 de julio de 2025, el Departamento de Salud de Puerto Rico emitió y notificó una *Resolución* mediante la cual acogió el *Informe Enmendado de la Oficial Examinadora* y sostuvo su postura inicial de desestimar la *Solicitud de Revisión Administrativa* por falta de jurisdicción.

Inconforme, el 22 de agosto de 2025, la parte recurrente presentó ante *nos* un *Recurso de Revisión Judicial* y alegó la comisión de los siguientes errores:

1. Computó indebido del término y conclusión errónea de falta de jurisdicción. El término de quince (15) días para solicitar revisión administrativa no comenzó a transcurrir en febrero de 2025, pues (a) la carta certificada fue devuelta "UNCLAIMED" y (b) el correo electrónico usado (naap@prtc.net) no era el correo electrónico del Recurrente. El primer aviso efectivamente recibido ocurrió el 1 de abril de 2025, fecha desde la cual se computa el término; la solicitud se presentó ese mismo día, por lo que fue oportuna.

2. Defecto sustancial en la notificación electrónica. La Agencia contaba con el correo correcto "naapair@gmail.com" al menos desde diciembre de 2023 en comunicaciones oficiales. Notificar a naap@prtc.net impidió la llegada efectiva de la notificación, viciando el cómputo del término.

3. Violación al debido proceso de ley. Se dejó sin efecto la vista señalada y se desestimó sin permitir al Recurrente presentar la "mejor evidencia" solicitada por la propia Agencia, ni litigar los méritos, privándole de notificación adecuada y oportuna real de ser oído. La Orden del 16 de junio de 2025 confirma que existía controversia sobre la validez de la notificación y que el foro reconoció la necesidad de mayor prueba, sin embargo, posteriormente no se permitió la presentación plena de evidencia en vista administrativa.

4. Inconsistencias y doble adjudicación administrativa. La Agencia emitió dos Resoluciones (11 de julio y 30 de julio de 2025) adoptando Informes distintos de la Oficial Examinadora, lo cual demuestra un manejo irregular y contradictorio que afecta la certeza y confiabilidad del proceso adjudicativo.

5. Aplicación incorrecta del Reglamento 9170 (Arts. XIII y XIX). Las notificaciones deben dirigirse a las direcciones actuales provistas por el comerciante. Ante la devolución postal y el uso de email incorrecto, la Agencia debía realizar esfuerzos razonables adicionales antes de iniciar el cómputo del término.

6. Errónea conclusión de falta de jurisdicción. La Oficial Examinadora y la Agencia aplicaron incorrectamente las normas de jurisdicción administrativa, privando a la parte Recurrente de su derecho a una adjudicación justa y en los méritos.

El 3 de septiembre de 2025, emitimos una *Resolución* mediante la cual le concedimos a la parte recurrida un término de veinte (20) días para presentar su posición al recurso. En cumplimiento con nuestra directriz, el 24 de septiembre de 2025, la

parte recurrida presentó un *Escrito en Cumplimiento de Resolución.* El 26 de septiembre de 2025, la parte recurrente presentó una *Réplica al Escrito en Cumplimiento de Resolución y Petición de Remisión a Vista Administrativa.* Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Revisión judicial de las determinaciones administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247 (2008).

La Sección 4.2 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9672). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson, Passalacqua v. Quirós, Betances*, 2024 TSPR 64, 214 ___ (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer, v. A.R.Pe,* 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Voilí Voilá Corp., et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que

rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra; Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transporte Sonell, LLC. v. Junta de Subastas*, 2024 TSPR 82, 214 DPR ___ (2024); *OCS v. CODEPOLA,* 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de

deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, los tribunales deben otorgar amplia deferencia a las decisiones de las agencias administrativas. Esto, en virtud de la experiencia y pericia que se presume que tienen esos organismos para atender y resolver los asuntos que le han sido delegados. Sin embargo, a la luz de *Loper Bright Enterprises v. Raimondo,* U.S., 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) y *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ___ (2025), al revisar las conclusiones de derecho los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias.

Así pues, son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Vázquez v. Consejo de Titulares, supra.* El foro judicial será quien deberá resolver todas las cuestiones de derecho pertinentes, las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y la revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. *Íd.*

Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades

que se les han delegado. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, 214 DPR ___ (2024); *González Segarra et al. v. CFSE*, 188 DPR 252 (2013).

Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc. y otros, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, *supra,* las determinaciones de derecho serán revisadas en su totalidad. Sección 4.5 de la LPAU, *supra*; Torres *Rivera v. Policía* de PR, *supra,* pág. 627.

Así pues, los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Vázquez v. Consejo de Titulares, supra.* Pero principalmente, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. *Íd.* Así, reiteramos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. *Íd.* Como corolario, al enfrentarse a un recurso de

revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.

## B. Reglamento Núm. 9170 de 4 de marzo de 2020

El Artículo XIII Sección A del Reglamento Núm. 9170, *supra,* establece, en lo pertinente, que:

> **[l]a notificación será remitida por correo regular a la dirección postal actual o enviada a la dirección de correo electrónico actual <u>proporcionada por el comerciante</u> al Programa WIC**.
>
> 1. El Programa WIC emitirá una carta de advertencia por correo certificado a la dirección proporcionada por el comerciante, después del primer incidente de una violación para lo cual se deberá establecer un patrón de incidencias, a fin de imponer una sanción a menos que el Programa WIC determine, a su discreción, que notificar al comerciante comprometería una investigación.
>
> 2. Una segunda carta y/o cartas posteriores por incidentes de violaciones que incluyen una sanción de acuerdo con el Artículo XII de este Reglamento, serán notificadas correo certificado a la dirección actual según proporcionada por comerciante al Programa WIC. La notificación le informará al comerciante sobre su derecho a solicitar una revisión administrativa dentro de los quince (15) días de la notificación. (Énfasis nuestro).

Asimismo, el inciso 6 del Artículo XIII Sección A del Reglamento Núm. 9170, *supra,* establece que:

> [s]erá responsabilidad de cada comerciante notificar a la División de Administración de Comerciantes cualquier cambio en sus direcciones postales y direcciones de correo electrónico. Las direcciones postales y de correo electrónico proporcionadas por el comerciante se considerarán correctas. Todas las notificaciones serán enviadas a la dirección postal o a la dirección de correo electrónico proporcionada por el comerciante y aquellas notificaciones enviadas por correo se considerarán entregadas cinco (5) días después de la fecha de envío.

De otro lado, el Artículo XIII Sección A del Reglamento Núm. 9170, *supra,* establece que una petición para revisión administrativa deberá ser radicada dentro de los quince (15) días siguientes a la notificación de una acción adversa ante la Oficina del Director del Programa WIC, para que la presentación de la misma sea efectiva.

**C. Notificación devuelta**

La Sección 3.14 de la LPAU (3 LPRA sec. 9654) dispone quienes tienen derecho a ser notificados de una orden o resolución final emitida por una agencia administrativa. *Román Ortiz v. OGPe*, 203 DPR 947 (2020). Así, la validez de la notificación de una orden o resolución final depende, no tan solo de que se dirija a la parte con derecho, sino que se efectué a través de los mecanismos autorizados. *Íd.*

Cónsono con lo anterior, en *Román Ortiz v. OGPe, supra*, nuestro máximo Foro determinó que, cuando una agencia administrativa notifica una determinación final adversa a una parte a la dirección correcta y conforme a los mecanismos autorizados, pero es devuelta, esto no torna automáticamente en suficiente la notificación. Asimismo, el Tribunal Supremo resolvió explícitamente que cuando una agencia tiene información que le permita conocer que sus intentos de notificar a la parte interesada han resultado inútiles, debe realizar esfuerzos adicionales razonables tal y como se esperaría de una agencia realmente deseosa de informar a las partes afectadas por un dictamen adverso. *Íd.* Estas diligencias no exigen lo absurdo e imposible a las agencias; tan solo requieren que se haga lo razonable a la luz de la totalidad de las circunstancias en cada caso. *Íd.*

**III.**

En la presente causa, la parte recurrente planteó, en síntesis, que la agencia recurrida realizó un cómputo indebido del término y una conclusión errónea de falta de jurisdicción. Arguyó que hubo un defecto sustancial en la notificación electrónica y una violación al debido proceso de ley, al dejarse sin efecto el señalamiento de Vista y desestimarse la *Solicitud de Revisión Judicial* sin que se le permitiera presentar la mejor evidencia. Además, la parte recurrente

arguyó que hay inconsistencias y doble adjudicación administrativa, pues se adoptaron informes distintos de la Oficial Examinadora. Asimismo, afirmó que hubo una aplicación incorrecta del Reglamento 9170, *supra*, esto porque las notificaciones deben dirigirse a las direcciones actuales provistas por el comerciante. No le asiste la razón.

De conformidad con los hechos aquí reseñados, el 12 de febrero de 2025, la parte recurrida emitió una *Notificación de Descalificación* a la parte recurrente. Dicha *Notificación de Descalificación* fue enviada al correo electrónico del recurrente; entiéndase al naap@prtc.net. Además, le fue notificada por correo certificado a su dirección postal: Urb. Los Árboles 488 Calle Capaprieto Rio Grande, 00745. Sin embargo, dicha correspondencia fue devuelta a la parte recurrida por no haber sido reclamada en el correo.

Así las cosas, el 1 de abril de 2025, la parte recurrente presentó una *Solicitud de Revisión Administrativa* sobre la *Notificación de Descalificación.* Luego de varios trámites procesales, el 23 de mayo de 2025, la parte recurrida presentó una *Moción Asumiendo Representación Legal, Solicitud de Desestimación, en Cumplimiento de Orden e Informativa.* Allí, sostuvo que el término para presentar la solicitud de revisión administrativa había vencido el 27 de febrero de 2025. Manifestó que la parte recurrente solicitó de forma tardía la revisión administrativa de la determinación de descalificación.

En consecuencia, el 27 de mayo de 2025, la Oficial Examinadora emitió una *Orden* mediante la cual concedió a la parte recurrente un término de cinco (5) días para replicar a la solicitud presentada por la parte recurrida. El 30 de mayo de 2025, la parte recurrente presentó una *Moción para Replicar la Moción Presentada por la Parte Apelada y Petición de Vista Presencial.* En la misma,

afirmó que la *Notificación de Descalificación* fue inadecuada porque el correo electrónico que tenía la parte recurrida en sus archivos era incorrecto y porque la única manera que provee el Reglamento Núm. 9170, *supra*, para realizar la notificación es por correo certificado, el cual no había recibido.

El 16 de junio de 2025, la Oficial Examinadora emitió una *Orden* mediante la cual ordenó a la parte recurrida a: (1) proveer copia certificada del sobre devuelto por el correo postal que notificaba la descalificación del comercio del recurrente; y, (2) presentar una certificación de la información de correo electrónico provisto por la parte recurrente, según surgía del expediente antes del 1 de abril de 2025. Ante ello, el 23 de junio de 2025, la parte recurrida presentó una *Moción en Cumplimiento de Orden y Reiterando Solicitud de Desestimación.*

Así las cosas, el 16 de julio de 2025, el Departamento de Salud de Puerto Rico emitió y notificó una *Resolución* mediante la cual desestimó la *Solicitud de Revisión Administrativa* por falta de jurisdicción.

Según surge del derecho que antecede, la notificación de descalificación deberá ser remitida por correo regular a la dirección postal actual o enviada a la dirección de correo electrónico actual proporcionada por el comerciante al Programa WIC. Artículo XIII Sección A del Reglamento Núm. 9170, *supra*. Además, el inciso 6 del Artículo XIII Sección A del Reglamento Núm. 9170, *supra*, establece que será responsabilidad de cada comerciante notificar cualquier cambio en sus direcciones postales y direcciones de correo electrónico. Así pues, las direcciones postales y de correo electrónico proporcionadas por el comerciante se considerarán correctas. *Íd.*

Con relación a las correspondencias devueltas, nuestro máximo Foro ha establecido que cuando una agencia tiene información que le permita conocer que sus intentos de notificar a

la parte interesada han resultado inútiles, debe realizar esfuerzos adicionales razonables tal y como se esperaría de una agencia realmente deseosa de informar a las partes afectadas por un dictamen adverso. *Román Ortiz v. OGPe, supra.* Estas diligencias no exigen lo absurdo e imposible a las agencias; tan solo requieren que se haga lo razonable a la luz de la totalidad de las circunstancias en cada caso. *Íd.*

En el caso ante *nos*, surge del expediente que el Departamento de Salud de Puerto Rico emitió una *Notificación de Descalificación* a la parte recurrente a la dirección de correo electrónico que obraba en el portal. Por lo tanto, a tenor con el el inciso 6 del Artículo XIII Sección A del Reglamento Núm. 9170, *supra*, está dirección proporcionada por la parte recurrente, quien tenía el deber de notificar cualquier cambio, se considera correcta.

Ahora bien, la parte recurrida también le notificó la *Notificación de Descalificación* a la parte recurrente a la dirección de correo postal. Sin embargo, está no fue reclamada por el recurrente en un periodo aproximado de veinte (20) días, por lo que fue devuelta a la parte recurrida el 7 de marzo de 2025. Así, es preciso determinar que la parte recurrida realizó esfuerzos razonables para notificar la descalificación del comercio al recurrente a las direcciones correctas. Por consiguiente, procedía la desestimación de la *Solicitud de Revisión Judicial* por falta de jurisdicción por tardío.

Por otra parte, con relación al señalamiento de error de que hubo una violación al debido proceso de ley, al dejarse sin efecto el señalamiento de Vista y desestimarse la *Solicitud de Revisión Judicial* sin que se le permitiera presentar la mejor evidencia, no le asiste la razón a la parte recurrida. Surge del expediente que, la Oficial Examinadora le brindó amplia oportunidad al recurrente para presentar evidencia en torno a la notificación, por lo que no era necesaria la celebración de una vista administrativa a esos efectos.

Por último, la parte recurrente argumenta que hay inconsistencias y doble adjudicación administrativa, pues se adoptaron informes distintos de la Oficial Examinadora. De una lectura desapasionada del *Informe de la Oficial Examinadora*, así como del *Informe Enmendado de la Oficial Examinadora*, surge que los informes son esencialmente los mismos. Por lo tanto, no encontramos que exista un manejo irregular y contradictorio que haya afectado la certeza y confiabilidad del proceso adjudicativo.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones